RICHARD A. JONES (BAR No. 135248)
E-MAIL: RJONES@COV.COM
COVINGTON & BURLING LLP
1 FRONT STREET
SAN FRANCISCO, CA 94111
TELEPHONE: (415) 591-6000
FACSIMILE:  (415) 591-6091

THOMAS S. WILLIAMSON, JR. (*PRO HAC VICE*)
E-MAIL: TWILLIAMSON@COV.COM
SHIMICA D. GASKINS (*PRO HAC VICE*)
E-MAIL: SGASKINS@COV.COM
COVINGTON & BURLING LLP
1201 PENNSYLVANIA AVE., N.W.
WASHINGTON, DC 20004
TELEPHONE: (202) 662-6000
FACSIMILE:  (202) 662-6291

ATTORNEYS FOR DEFENDANT
GILEAD SCIENCES, INC.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID MOORE,<br><br>Plaintiff,<br><br>v.<br><br>GILEAD SCIENCES, INC.,<br><br>Defendant. | **Case No. CV 07-3850 SI**<br><br>**DEFENDANT'S NOTICE OF MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Honorable Susan Y. Illston<br>Date: October 21, 2011<br>Time: 9:00 a.m. |

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on October 21, 2011 at 9:00 a.m. in Courtroom 10, 19th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Gilead Sciences, Inc. will move this Court pursuant to Fed. R. Civ. Proc. Rule 26(c) for a protective order.

This motion seeks a protective order to prevent Plaintiff David Moore from pursuing improper discovery against Gilead.

COVINGTON & BURLING

/s/

RICHARD A. JONES  (Bar No. 135248)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**I.     INTRODUCTION**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure and Local Rules of the U.S. District for the Northern District of California, Defendant Gilead Sciences, Inc. ("Gilead") moves the Court for a protective order to prevent Plaintiff David Moore ("Moore" or "Plaintiff") from pursuing wide-ranging discovery that is irrelevant, invasive of privilege, and far beyond the scope of Plaintiff's retaliation case and Gilead's Motion for Sanctions.

Despite Plaintiff's repeated protestations regarding the large volume of pages he has received in discovery thus far, Plaintiff's appetite for discovery appears to know no limit. Plaintiff has now propounded a total of **150** document requests; Gilead has produced over **70,000** pages of documents in response to Plaintiff's requests; and Plaintiff has taken five depositions.  As a result, Gilead has already spent hundreds of thousands of dollars defending itself in discovery.  Plaintiff nevertheless insists that he is entitled to extraordinarily broad discovery into every conceivable aspect of Gilead's document retention and Plaintiff's underlying *qui tam* claims, merely because Plaintiff's spoliation of evidence is at issue.  Gilead disagrees and notes that this appears to be a transparent tactic to delay having the Court become aware of the merits of the Motion for Sanctions.  Indeed, it would be a perverse result to force

1    Gilead to expend hundreds of thousands more dollars trying to locate documents Plaintiff has

2    admittedly destroyed.  Given the extraordinary and unjustified breadth and scope of Plaintiff's

3    discovery requests, Gilead is forced to seek a protective order from the Court.

4    **II.      STATEMENT OF RELEVANT FACTS**

5            This is a whistleblower retaliation matter brought under the federal False Claims Act and

6    several state law provisions.  The Plaintiff filed his original *qui tam* action under seal in

7    November of 2006.  Shortly after Plaintiff first filed his suit, the Department of Justice served a

8    subpoena on Gilead.  In response, Gilead issued a legal hold to its employees in December of

9    2006.  Plaintiff later amended his complaint to add his whistleblower claims in March of 2009.

10          In answering an interrogatory in January of this year and during his deposition on

11   June 17, 2011, Plaintiff admitted that he "frequently" used "wiping software" to carry out

12   spoliation by erasing emails and documents from the hard drives of his company-issued laptops

13   and that he ultimately erased his hard drive completely before it was returned to Gilead.  *See*

14   Decl. of Alexandra Brazier, Ex. A, Pl.'s Interrog. Resp. No. 20; *id.*, Ex. B at 108-09, 152-53.

15   Based on Plaintiff's admissions and an expert report confirming Plaintiff's extensive computer

16   wiping, *see id.*, Ex. C, Gilead filed a Motion for Sanctions on August 1, 2011.  Plaintiff now

17   seeks additional discovery purportedly to allow him to prepare his opposition to Gilead's

18   Motion for Sanctions.

19   **A.      Plaintiff's Discovery Requests**

20          On August 24, 2011, Plaintiff served his fourth set of Requests for Production of

21   Documents and a notice of deposition under Rule 30(b)(6), *see id.*, Exs. D & E, to which Gilead

22   objected on September 14, 2011.  That notice included 26 new document requests and 18

23   categories of 30(b)(6) topics.  Plaintiff contends that his most recent discovery requests are

24   relevant to Gilead's Motion for Sanctions.  *See id.*, Ex. D.  However, many of Plaintiff's

25   requests for production of documents are overbroad, unduly burdensome, or irrelevant to

26   Plaintiff's spoliation activities.  Further, Plaintiff's deposition notice improperly seeks

27   information that is privileged, duplicative of prior testimony, or not relevant nor likely to lead to

28   the discovery of admissible evidence.  The parties met and conferred regarding the document

1   requests and 30(b)(6) topics on August 31 and September 16, 2011, but were unable to come to

2   an agreement on the following, for which Gilead seeks a protective order:

3           1.      Document requests numbered:  125, 126, 127, 133, 136, 137, 146, 147, and 150;

4           2.      30(b)(6) topics numbered:  7, 8, 12, 14, 15, 16, 17, and 18.

5   These requests are described in their entirety in the accompanying Declaration of A. Brazier.

6   **III.    ARGUMENT**

7   **A.      Legal Standard**

8           Although the Federal Rules of Civil Procedure permit a broad range of discovery, the

9   "right of a party to obtain discovery is not unlimited." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423

10  (9th Cir. 1995).  Discovery is limited to "any non-privileged matter that is relevant to any

11  party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Thus, discovery requests must be

12  reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Oppenheimer Fund,*

13  *Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) ("Discovery of matter not 'reasonably calculated

14  to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1).")

15  (internal citation omitted).

16          Rule 26(c)(1) provides that the Court may grant a protective order restricting discovery

17  "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

18  expense . . . ."  Fed. R. Civ. P. 26(c)(1).  The protective order may, among other things,

19  "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain

20  matters."  Fed. R. Civ. P. 26(c)(1)(D).  A protective order should be granted when the moving

21  party establishes "good cause" for the order.  Fed. R. Civ. P. 26(c)(1).  Good cause is

22  established where the party seeking protection demonstrates that disclosure will cause a

23  "specific prejudice or harm." *Phillips v. GMC*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *see*

24  *also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

25  **B.      A Protective Order Is Appropriate Because Plaintiff's Discovery Requests Far
         Exceed the Scope of the Claims and Defenses In This Case**
26

27          This Court should issue a protective order for several reasons.  Plaintiff's Request for

28  Production of Documents, Set Four, and 30(b)(6) Deposition Notice of August 24, 2011

1    (collectively, the "discovery requests") are manifestly overbroad; they seek documents and

2    testimony that are not likely to lead to relevant or admissible evidence; and they request

3    documents that are clearly privileged.  Moreover, Gilead will suffer significant harm.

4    **C.    Plaintiff's Attempt to Seek Additional Discovery from Gilead Is Without Merit.**

5           **1.    *Plaintiff improperly seeks to burden Gilead with restoring its email disaster
6                   recovery system.***

7           Plaintiff's Request for Production ("RFP") No. 133 dramatically exemplifies the

     extraordinarily overbroad and burdensome nature of Plaintiff's document requests.
8
     RFP No. 133 seeks "any and all emails archived by Gilead sent or received by Plaintiff in any
9
     form including backup systems for emergency preparedness." *See* Decl. of A. Brazier, Ex. D.
10
     In response to Plaintiff's earlier discovery, Gilead has produced over 25,000 pages of
11
     nonprivileged, responsive emails and attachments sent or received by Plaintiff, *see id.*—most of
12
     which were archived by other Gilead employees, *see* Decl. of Vicki Clewes in Support of
13
     Defendant's Motion for Sanctions, Aug. 1, 2011 (attached as Ex. G to the accompanying Decl.
14
     of A. Brazier).  Plaintiff now asserts that he is entitled to *all* emails, regardless of their relevance
15
     to this litigation or the burden of accessibility.
16
            To comply with this request, Gilead would have to incur the quite substantial expense of
17
     indexing the backup tapes, processing the restored data, and conducting a second review for
18
     responsive documents.  The onerous steps involved in restoration of Gilead's backup tapes are
19
     more fully set forth in the Declaration of Angelo Mortellaro.  Gilead has sought estimates from
20
     Deloitte LLP and learned that the initial stage alone, i.e., just indexing the backup tapes, would
21
     cost $360,000 plus an additional expense of $35,000 per email custodian.  *See* Decl. of A.
22
     Mortellaro, Ex. A.  The very high cost stems from the reality that the purpose of the backup
23
     system is not intended to provide for the recovery of discrete documents or files, but rather to
24
     ensure against the loss of the company's entire network in case of a catastrophic event.  *See id.*
25
            In other words, Gilead would have to expend, at a minimum, hundreds of thousands of
26
     additional dollars to further process an enormous amount of irrelevant electronic information.
27
     The burden of these expenses would be grossly disproportionate to any possible benefit that
28

Motion for Protective Order                           4
Case No. CV 07-3850 SI

1    might accrue to Plaintiff. *See Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 621 (D.N.J.

2    2010) (holding that the state did not have to search backup tapes because the magistrate judge

3    found that "the amount of evidence produced by Defendants (including depositions of the key

4    individuals and tens of thousands of emails) meant the backup tapes were likely to produce

5    evidence of only marginal, cumulative benefit, and at great expense").

6          This massive cost is also totally unjustifiable because this recovery effort would be an

7    exercise in futility.  Presumably, the purpose of RFP No. 133 is to allow Plaintiff to claim that

8    Gilead already possesses the emails that Plaintiff admits he destroyed.  The difficulty with this

9    argument is that the disaster recovery backup tapes were retained at one-month intervals, *see*

10   Decl. of A. Mortellaro; accordingly, emails that were created and destroyed by Plaintiff within

11   any given one-month interval may not be preserved on the existing sets of backup tapes.  This is

12   particularly true during a substantial portion of the time at issue—specifically up until June

13   2007—when Gilead relied on field staff to preserve or archive their emails on an individual

14   basis rather than a centralized system that superseded destruction of emails by individual sales

15   representatives.  *See* Decl. of A. Brazier, Ex. F at 96-97; Decl. of Vicki Clewes, Aug. 1, 2011.

16   As a result, even if Gilead fully carried out the elaborate procedures necessary to restore and

17   review its backup tapes, the parties would still have no idea what portion of the old emails that

18   Plaintiff has admitted he destroyed would have been recovered.[1]

19         Furthermore, Plaintiff's spoliation activities not only destroyed emails but also numerous

20   other types of electronic documents and files on his Gilead-issued laptop hard drives.  Gilead

21   does not centrally back up the hard drives of field employees such as Plaintiff and does not

22   possess any disaster recovery backups of Plaintiff's hard drives.  *See* Decl. of Vicki Clewes,

23   Aug. 1, 2011.  Thus, the restoration of data tapes in search of some unknown portion of the

24

25

26   _____

27   [1] Of course, if the Court should rule in Plaintiff's favor with respect to RFP No. 133, Plaintiff
     should be required to bear the expense of the recovery effort. *See generally Zubulake v. UBS*
     *Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003).

28

emails Plaintiff destroyed would still leave unanswered the number and nature of other

potentially prejudicial documents destroyed as a consequence of Plaintiff's wiping activities.

And, of course, Plaintiff should not be permitted to use the "backup system" request to

pursue his unstated agenda, namely, to engage in an unrestricted "fishing expedition." *See*

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone

the use of discovery to engage in 'fishing expedition[s].'") (internal citations omitted).

> ### 2. *Plaintiff improperly seeks voluminous discovery and testimony related to the DOJ investigation and Gilead's discovery of Plaintiff's wiping activities.*

In addition, Plaintiff seeks "any and all documents turned over" or received from the

United States Department of Justice ("DOJ") as a result of the DOJ subpoena and the

subsequent legal hold that Gilead issued. *See* Decl. of A. Brazier, Ex. D (RFP Nos. 147, 150).

Plaintiff also seeks testimony related to the DOJ investigation. *See id.*, Ex. E (Dep. Topic No.

8). Complying with these requests would further require a massive, overly broad, and

burdensome production by Gilead of irrelevant documents. The crux of Plaintiff's allegations is

that Gilead retaliated against him for filing a *qui tam* complaint and failed to accommodate his

alleged disability; Gilead's Motion for Sanctions is predicated on Plaintiff's **admissions** of

wiping evidence prior to, during, and after both DOJ's investigation of his *qui tam* allegations

and his contemplation of bringing employment-based claims. The documents that Gilead

provided to, or received from, DOJ during the government's investigation are in no way

relevant to Plaintiff's opposition to Gilead's Motion for Sanctions.[2]

Also, this request, along with Plaintiff's request for testimony regarding the

circumstances of how Gilead learned of Plaintiff's wiping activities and its motivations for

conducting forensic analyses of Plaintiff's hard drives, would require disclosure of information

protected by the attorney-client privilege and/or the attorney work product doctrine. *See id.*, Ex.

E (Dep. Topic Nos. 8, 17, 18). Gilead worked closely with outside counsel to respond to the

---

[2] Defendant also separately maintains that these DOJ-related documents are not relevant to the merits of Plaintiff's employment claims.

1    subpoena served by DOJ.[3]  The "facts and circumstances" of any documents turned over to DOJ

2    would have involved outside counsel's advice in anticipation of DOJ's possibly filing suit.

3    Thus, this discovery request necessarily seeks disclosure of privileged information for which

4    Plaintiff has not shown a substantial need, and this Court should reject it. *See* Fed. R. Civ. P.

5    26(b)(3).

6            Similarly, Plaintiff seeks this information to determine what prompted Gilead to review

7    his hard drive for evidence of spoliation.  However, Plaintiff has already taken the 30(b)(6)

8    deposition of Vicki Clewes, during which Plaintiff's counsel explored when Gilead learned of

9    Plaintiff's wiping and its motivation for conducting a forensic analysis. *See* Decl. of A. Brazier,

10   Ex. F at 30-31, 116, 120-24.  Ms. Clewes testified as to the approximate date on which Gilead

11   learned of Plaintiff's wiping (October 2008) and provided a general explanation of how Gilead

12   learned of Plaintiff's wiping activities.  Any additional specific information would require

13   Gilead to disclose confidential communications between the company and its attorneys, to

14   which Plaintiff is not entitled.  And, in any event, that information is not relevant or necessary

15   for Plaintiff to have an opportunity to adequately respond to Gilead's Motion for Sanctions.

16           **3.**    ***Plaintiff improperly seeks to copy the contents of the hard drives at issue.***

17           Despite Plaintiff's contentions to the contrary, the Motion for Sanctions is not a basis for

18   allowing Plaintiff access, without limitation, to *any and all* of Gilead's electronic information.

19   For instance, Plaintiff's Requests for Production Nos. 125 and 126 seek to "**copy** any

20   electronically stored information" on the 2007 image of Plaintiff's hard drive and Plaintiff's

21   2008 refresh hard drive. *See* Decl. of A. Brazier, Ex. D (RFP Nos. 125, 126) (emphasis added);

22   *see also id.*, Ex. D (RFP No. 127).  Gilead has agreed to permit Plaintiff's forensic expert to

23   inspect the 2007 image and 2008 hard drive to evaluate Plaintiff's admitted spoliation activities

24   as set forth in the report of Gilead's forensic expert, *see id.*, Ex. C; what Gilead objects to is

25   Plaintiff's demand to collect all information stored on those computers in order to conduct a

26

27   _____

     [3] DOJ ultimately declined to intervene in support of Plaintiff's *qui tam* complaint.

28

"fishing expedition" into the manner in which Gilead has collected and reviewed documents in response to Plaintiff's discovery requests.  Gilead has *already reviewed and produced* nonprivileged relevant documents from the 2007 image and the 2008 refresh hard drive.

This Court should reject Plaintiff's contention that the Motion for Sanctions gives him carte blanche, open-ended discovery into Gilead's document collection and review, which includes the work product of its counsel.  Indeed, Plaintiff has no basis under the Federal Rules to search a party's documents without limitation.  *See, e.g.*, *Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710, 2719 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing."); *York v. Tropic Air, Ltd.*, 2011 U.S. Dist. LEXIS 46249, at *27-28 (S.D. Tex. Apr. 28, 2011) (rejecting Plaintiffs' request for a neutral third party to search the defendant's email and computer system for responsive documents).  Gilead's Motion for Sanctions does not nullify the normal restrictions on discovery.

### 4. *Despite extensive production by Gilead, Plaintiff now improperly seeks additional documents.*

Likewise, this Court should reject Plaintiff's contention that the Motion for Sanctions justifies the sweeping breadth and scope of his additional discovery demands.  Despite Gilead's having already produced tens of thousands of pages of documents, Plaintiff continues to seek what could amount to tens of thousands more documents.  These discovery requests are completely unwarranted and not likely to lead to evidence that would support Plaintiff's opposition to the Motion for Sanctions or the merits of this case.

For example, Plaintiff is seeking "any and all documents pertaining or relating to any computer inspections *performed by a third party vendor* as to any computer hard drive or mirror image of any current or former employee of yours from 2005 to the present."  *See* Decl. of A. Brazier, Ex. D (RFP Nos. 136, 137) (emphasis added).  Ostensibly, Plaintiff seeks this information to somehow argue that Gilead unfairly singled out Plaintiff for inspection of his hard drive.  But that argument—and this request—are based on a fundamental misunderstanding of the premise of Gilead's Motion for Sanctions and the reasons courts impose sanctions.  The

relevant issues raised by the Motion for Sanctions are whether Plaintiff intentionally destroyed relevant documents and whether the appropriate sanction for such spoliation is dismissal of his Complaint. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 956 (9th Cir. 2006). Discovery into inspections of other employees' hard drives has no relevance and will not lead to any admissible evidence on the issue of Plaintiff's culpability for spoliation.

Likewise, Plaintiff's request for "any and all documents obtained by Gilead from its sales representatives related to any legal hold that Gilead contends Plaintiff violated" is a remote evidentiary foray. *See* Decl. of A. Brazier, Ex. D (RFP No. 146). This request, much like RFP Nos. 136 and 137, misconstrues the relevance of the legal hold to Gilead's Motion for Sanctions. Plaintiff's being subject to and aware of the legal holds related to *his own qui tam* lawsuit demonstrates that Plaintiff was both under an obligation to preserve documents and aware of that obligation when he admittedly destroyed those documents. Documents maintained by other sales representatives in accordance with the legal hold related to Moore's *qui tam*—let alone any other litigation—have no bearing on whether Plaintiff had an obligation to preserve documents. These requests, therefore, are unlikely to lead to relevant evidence, and Gilead should not be required to respond to these discovery requests.

### 5. *Despite prior discovery, Plaintiff improperly seeks duplicative testimony.*

Plaintiff improperly seeks additional testimony regarding the ability of Gilead to retrieve documents Plaintiff spoliated, as well as the "facts and circumstances" of Gilead's computer use policy, IT acceptable use policy, and legal holds. *See id.*, Ex. E (Dep. Topic Nos. 7, 12, 14, 15, and 16). However, this requested testimony is duplicative and cumulative of the testimony already provided by Gilead's 30(b)(6) witness, Vicki Clewes, on July 27, 2011. *See id.*, Ex. F. During the deposition, Plaintiff questioned Ms. Clewes about Gilead's access to Plaintiff's emails, *see id.*, Ex. F at 44-49, 52, 54; Gilead's computer use policy that Plaintiff signed, *see id.*, Ex. F at 110-13; Gilead's IT Acceptable Use Policy, *see id.*, Ex. F at 101-02; and the legal holds that Plaintiff violated, *see id.*, Ex. F at 116-17, 125. Plaintiff's counsel specifically stated that he intended to use his previous 30(b)(6) deposition to inquire into "testimony and documents concerning the backup of Mr. Moore's hard drive by Gilead," and he was given ample

1   opportunity to do so at Ms. Clewes' deposition, *see id.*, Ex. F at 6-7; *see also* Ex. H.  This Court

2   should reject Plaintiff's attempt to obtain duplicative testimony and impose on Gilead the

3   burden of preparing a witness to discuss previously noticed 30(b)(6) topics.

4   **D.      Good Cause Exists for the Issuance of a Protective Order.**

5          There is good cause to protect Gilead from the annoyance, undue burden, and expense

6   that would result if Gilead had to reply to the discovery requests at issue.  This Court has wide

7   discretion to determine what constitutes a showing of good cause and to fashion a protective

8   order that provides the appropriate degree of protection.  *See Seattle Times Co. v. Rhinehart*,

9   467 U.S. 20, 36 (1984).  In *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, the

10  Court noted that "[o]bviously, if the sought-after documents are not relevant nor calculated to

11  lead to the discovery of admissible evidence, then *any burden whatsoever* imposed . . . would be

12  by definition 'undue.'"  163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (emphasis in original).

13         As stated above, Plaintiff requests information that is not relevant—nor reasonably

14  calculated to lead to the discovery of admissible evidence.  Furthermore, the requests are

15  oppressive and impose an undue burden on Gilead.  *See* Fed. R. Civ. P. 26(b)(1).  To comply

16  with Plaintiff's discovery requests, Gilead would have to spend several more months reviewing

17  tens of thousands of documents at inordinate expense.  Additionally, Gilead would have to incur

18  separate expenses related to restoring its emergency backup tapes—a cost currently estimated to

19  be a minimum of $360,000 just to determine which tapes might contain Exchange email data,

20  plus an additional expense of $35,000 per email custodian.  Plaintiff also seeks discovery of

21  information protected by the attorney-client privilege and attorney work product doctrine.  In

22  short, Plaintiff is not entitled to the untrammeled discovery that is being requested.

23  **IV.      CONCLUSION**

24         Based on the foregoing, Gilead respectfully requests that the Court grant this motion for

25  a protective order.

26  DATED:  September 29, 2011          By:  COVINGTON & BURLING LLP

27                                          /s/
                                          RICHARD A. JONES (BAR NO. 135248)

28