RICHARD A. JONES (Bar No. 135248)
Email: rjones@cov.com
COVINGTON & BURLING LLP
1 Front Street
San Francisco, CA  94111
Telephone:  (415) 591-6000
Facsimile:    (415) 591-6091

THOMAS S. WILLIAMSON, JR. (*Pro hac vice*)
Email: twilliamson@cov.com
SHIMICA D. GASKINS (*Pro hac vice*)
Email:  sgaskins@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone:  (202) 662-6000
Facsimile:    (202) 662-6291

Attorneys for Defendant
GILEAD SCIENCES, INC.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID MOORE,<br><br>        Plaintiff,<br><br>        v.<br><br>GILEAD SCIENCES, INC.,<br><br>        Defendant. | **Case No. CV 07-3850 SI**<br><br><br>**JOINT STATEMENT ON OUTSTANDING  DISCOVERY ISSUES**<br><br>Judge: Honorable Susan Y. Illston |

The parties, Plaintiff David Moore (hereinafter, "Moore" or "Plaintiff Moore") and Defendant Gilead Sciences, Inc. (hereinafter, "Gilead" or "Defendant Gilead"), submit this Joint Statement on the outstanding discovery issues pursuant to this Court's Standing Order.

## I.    INTRODUCTION

Recently, on October 1, 2011, Moore filed a Fourth Amended Complaint alleging, *inter alia*, that Gilead terminated his employment in violation of the anti-retaliation provisions of the False Claims Act, as codified at 31 U.S.C. § 3730(h); the New York Whistleblower Law, as codified at New York Labor Law § 740; the New York False Claims Act, as codified at New York State Finance Law § 191; and that Gilead discriminated against him in the terms and conditions of his employment in violation of the New York State Human Rights Law, as codified at Executive Law § 296, and the New York City Human Rights Ordinance, as codified at N.Y. Admin. Code § 8-107.  Plaintiff principally alleges that Gilead terminated his employment in retaliation for filing a *qui tam* suit.  The parties have been unable to resolve the scope of the issues in this case, including the extent to which proof of the underlying *qui tam* allegations is relevant to Plaintiff's retaliation claim, if at all, and whether Plaintiff's recent discovery requests are relevant to Defendant's motion for sanctions.[1]

## II.    PLAINTIFF'S DISCOVERY POSITION

There are essentially three discovery subjects covered in this letter:  (1) Plaintiff's Request for Production, Set One; (2) Plaintiff's Deposition Notice for Defendant Gilead Sciences, Inc.; and (3) Plaintiff's Request for Production, Set Four.  As a result of Defendant's Motion for Terminating Sanctions, Plaintiff served discovery specific to answering this motion. Plaintiff served Request for Production of Documents, Set Four (Request Nos. 125 through 150).  Defendant timely responded to these Requests, serving a response consisting solely of objections as to Request Nos. 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, and 150.

---

[1] The issues addressed in this Joint Statement do not include the issues addressed in Gilead's Motion for Protective Order, filed on September 29, 2011.

Defendant has moved for a protective order as to Document Request Nos. 125, 126, 127, 133, 136, 137, 146, 147, and 150.  These Requests are, therefore, addressed in Gilead's Motion and Plaintiff's Response to that Motion.

In addition, Plaintiff served a deposition notice upon Defendant requesting testimony as to various topics.  Defendant served objections only as to Topic Nos. 7, 8, 10, 11, 12, 14, 15, 16, 17, and 18.

Defendant has moved for a protective order as to Topic Nos. 7, 8, 12, 14, 15, 16, 17, and 18.

**A.     Plaintiff's Request for Production of Documents, Set One.**

Defendant has provided inadequate responses and refused to produce documents for numerous categories.  A further supplemental response should be compelled as to Request Nos. 56, 57, 58, 59, 84, and 85 because of Gilead's intransigence.

Request Nos. 56, 57, 58, 59 all concern Plaintiff's whistleblower complaint and Gilead's response.  More specifically, Plaintiff seeks information concerning Gilead's use of illegal kickbacks to doctors -- in the form of honorarium for speaking at programs on Gilead's behalf.  There is a sufficient basis for these Requests as Bates numbered document GS_00002962 involves an email exchange between Mr. Moore and his supervisor, Cliff Keeling in which Mr. Keeling agrees to follow up with a phone conversation with Joseph Exilhomme, M.D., pressing Dr. Exilhomme that he will need to increase his percentage of prescribing Gilead products up to at least the national average in exchange for more speaker programs (and honorariums).  Contrary to Gilead's assertions, these documents are sought not because Plaintiff seeks to litigate causes of action under the False Claims Act long since dropped, but because Gilead claims that Mr. Moore was terminated because of his poor performance.  Mr. Moore contends that his poor performance was related to his refusal to engage in the illegal marketing activities Mr. Keeling and others at Gilead continued to pressure him to do.  After Mr. Moore ceased cooperating with the government in setting up these payola speaker programs, Mr. Moore no longer wanted to participate in the illegal marketing tactics that had become *pro forma* requirements for him at Gilead.

Request Nos. 84 and 85 concern other complaints by whistleblowers of illegal activities at Gilead or of retaliation for reporting illegal activities at Gilead. This type of "me too" evidence is discoverable and discovery should be permitted as questions of admissibility are best determined at trial. *See Sprint/United Management Co. v. Mendelsohn* 552 U.S. 379, 388; 128 S.Ct. 1140, 1147 (2008) ("The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.")

**B.      Deposition Topics of Deposition Notice to Defendant Gilead Sciences, Inc.**

Gilead has objected to Topic Nos. 10 and 11 and refused to produce a witness for these topics. Deposition Topic Nos. 10 and 11 both concern the contents and relevance of any documents that Gilead claims that Mr. Moore spoliated. Gilead's response is that "it is unable to determine which specific documents Plaintiff spoliated" – at least as to No. 11. This is untrue. Gilead has provided a substantial listing of the documents it contends that Mr. Moore spoliated – over 11,000 documents. Gilead can claim that it does not know all of the documents it is claiming as to its motion, but for those documents it has been able to identify, it should have an obligation to provide a witness to testify as to these matters. Plaintiff is entitled to reasonable discovery as to the contents and relevance of the documents Gilead claims were destroyed. This goes to the issue of how significant the claimed spoliation is. Surely this is relevant to Gilead's Motion for Terminating Sanctions.

**C.      Plaintiff's Requests for Production of Documents, Set Four.**

Defendant also agreed to make available for inspection the computer images as to Request for Production Nos. 125, 126, and 127, but has made these the subjects of its Motion for a Protective Order. Plaintiff is unsure how that is consistent, but will leave that to the Court's determination.

As to Request for Production Nos. 129 and 130, like No. 128, Plaintiff explained in the meet and confer process that what is requested is that Defendant either produce in sequence or identify all of the emails that were retained my Mr. Moore or by other persons. Defendant

produced emails, but did not provide any information as to how any of these emails was obtained. Plaintiff has also made specific inquiry as to private emails obtained by Gilead from Diana Williamson, M.D., to Mr. Moore. Gilead has, to date, provided no information as to how it obtained these emails.

As to Request for Production Nos. 131 and 132, Defendant is refusing to respond to a clearly relevant document Request. Plaintiff is asking what emails Mr. Moore should have retained in Gilead's view. It obviously has thousands of emails of Mr. Moore – obtained from sources other than Mr. Moore that Gilead has, to date, refused to specify. It should be able to state with particularity at least to those emails what emails Mr. Moore should have archived.

Again, as to Request for Production No. 134, Plaintiff is asking Gilead to produce all documents it contends that Mr. Moore spoliated. Obviously there will be documents that Gilead is unable to produce. The point of this Request, however, is to identify those documents that Gilead contends Mr. Moore spoliated that it has been able to obtain by other sources. If, indeed, Gilead is able to obtain these documents by other means, it significantly blunts its argument that the alleged spoliation by Mr. Moore was significant. Gilead should be compelled to provide a good-faith response to this Request.

The same analysis applies to Request for Production No. 135.

Request Nos. 138, 139, 140, 141, 142, 143, 144, and 145 all pertain to disciplinary action or terminations involving violations of Gilead's computer use policy, its legal hold policies, or email archiving policies of Gilead.

Gilead is contending that Mr. Moore was fired for his violation of these policies. Plaintiff believes that this is a pretextual reason for his termination based upon his whistleblower activities. As a result, Mr. Moore has sought documents related to the discipline or termination of other Gilead employees because of violations of Gilead's legal hold or computer use policies. In short, is preventing Plaintiff from obtaining evidence of any comparable situations.

If Plaintiff is correct, there have been no other terminations resulting from violation of any of these policies. To the extent there are no such other terminations, Gilead should be

1    required to so state: No responsive documents exist.  Instead, Gilead merely claims that this

2    information is not relevant.

3           Unless Gilead intends to drop one of its reasons for Mr. Moore's termination was his

4    violation of Gilead's computer use policy and/or its legal hold policy, this information is

5    directly relevant to Gilead's alleged reasons Mr. Moore's termination and Mr. Moore's claim

6    that these reasons are pretextual.

7           Request Nos. 148 and 149 seek documents related to Gilead's claims that Mr. Moore

8    spoliated documents.  Instead of giving a forthright response, Defendant provides an evasive

9    response.

10          Gilead has no good cause for refusing to provide all responsive documents in its

11    possession, custody, or control.  Defendant can certainly claim that it does not know all of the

12    documents that it claims Mr. Moore spoliated.  Nevertheless, for those documents it is aware of,

13    Gilead has an obligation to provide documents related to these, including how Gilead was able

14    to obtain these documents.

15          To suggest that Gilead does not have to provide responsive documents here allows

16    Gilead to escape any inquiry into two important issues surrounding its Motion for Terminating

17    Sanctions:  1) What documents were destroyed that could not be recovered by other means?;

18    and 2) What is the significance of these documents that could not otherwise be recovered to this

19    litigation?

20          Gilead would, of course, like to contend that Mr. Moore destroyed documents and that it

21    has no idea what these documents are and that the worst possible inference should be made

22    about this alleged spoliation of documents.  That position, however, should stand the test of

23    reality. Gilead's deliberately vague statements as to the relevance of the allegedly spoliated

24    documents demands more scrutiny than Gilead, apparently, is willing to withstand without

25    Court intervention.

26   **III.**     **DEFENDANT'S DISCOVERY POSITION**

27          Throughout this litigation, Plaintiff has requested an overwhelming and disproportionate

28    amount of discovery.  Indeed, Defendant has produced over 70,000 pages in response to

1   Plaintiff's discovery requests.  The majority of the remaining outstanding discovery disputes are

2   the direct result of Plaintiff's unwillingness to focus the scope of discovery on his retaliation

3   claim as distinguished from the underlying *qui tam* action, which was previously dismissed.  In

4   addition, Plaintiff is now attempting to use Gilead's Motion for Sanctions as a basis for

5   discovery that is far beyond the scope of Plaintiff's spoliation of evidence and the substantive

6   claims he asserts.  Gilead, therefore, maintains that the Court should sustain its objections to the

7   following discovery requests.

8       **A.      Plaintiff Seeks Documents that are Impossible for Defendant to Produce due
                  to Plaintiff's Spoliation of Evidence**
9

10      Plaintiff seeks documents that Plaintiff has admitted destroying as well as 30(b)(6)

11  testimony regarding the specific documents Plaintiff spoliated, including their "relevance" and

12  "content."  *See* Decl. of Shimica Gaskins, Ex. A-B; Reqs. For Prod. ("RFP") Nos. 131, 132,

13  134, 135, and 149; 30(b)(6) Topic Nos. 10 and 11.  The unstated premise of these requests is

14  that Gilead has some comprehensive database or index of the specific emails and other

15  documents that Plaintiff decided to destroy using the wiping software he purchased.  There is, of

16  course, no factual basis for this premise.  Plaintiff never informed Gilead of the specific emails

17  and other materials he chose to destroy, and Plaintiff repeatedly acknowledged at his deposition

18  that he has no way of verifying the specific information that he destroyed.  *See* Dep. Tr. Vol. II,

19  122, 165, and 174.  Accordingly, Gilead objected to these requests on the grounds that Gilead is

20  unable to determine the documents that Plaintiff should have archived or maintained.  Gilead

21  further referred Plaintiff to the previously produced forensic report prepared by Guidance

22  Software, which identified file names of certain of the destroyed documents, to the extent those

23  file names were recoverable, as the only information Gilead possesses regarding the specifics of

24  Plaintiff's spoliation.  As a practical matter, it would be impossible for Gilead to identify or

25  testify regarding documents that, in thousands of instances, no longer exist.  Gilead, therefore,

26  should not be required to respond to these requests.

27

28

**B.**      **Plaintiff Seeks Unnecessary, Expansive Discovery Related to His Dismissed Qui tam Claims**

Despite having dismissed his qui tam claims, Plaintiff continues to assert that he is entitled to unnecessary, expansive discovery related to those claims.  He maintains that he is entitled to three categories of documents related to his qui tam claims.  First, any and all documents relating to "pay[ing] any doctors to speak or attend "meetings, seminars, or presentations of any kind."  *See* Ex. C, RFP Nos. 58 and 57.  Second, any and all documents provided to Plaintiff relating to the promotion of "any" of Gilead's drugs since 2005 as well as any documents related to meetings Plaintiff attended regarding the promotion of Gilead's drugs since 2005.  *See* Ex. C, RFP Nos. 59, 61, 62, 63, and 64.  And, third, documents related to "any complaint of retaliation," "any allegation of violation of anti-kick [back] laws pertaining to HIV drugs," or, even more broadly, "any allegation of a violation of anti-kick [back] laws."  *See* Ex. C, RFP Nos. 84, 85, and 86.  Gilead has objected to these requests as unreasonably broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because they seek documents related to Plaintiff's underlying qui tam claims, which are irrelevant to Plaintiff's retaliation claim.  Plaintiff asserts that the requests are relevant because "he was forced to engage in illegal activities and that he resisted these illegal activities," which was "a major source of Plaintiff's difficulties in his performance evaluations."  He also maintains that the underlying qui tam allegations are relevant for him to prove Gilead violated New York Labor Law § 740 (the New York whistleblower law).  The Court should reject these arguments.

During his deposition, Plaintiff testified that his deficient performance was attributable to an uneven "playing field" and his working in a territory in which physicians were more "corruptible" by the competition than in other areas.  *See* Dep. Tr. Vol. I, 98-101.  Most significantly, Plaintiff testified that the alleged pressure to engage in "illegal activities" was supposedly communicated only orally (without any witnesses) and **not in writing**.  *See* Dep. Tr. Vol. II, 163-65.  Consequently, these document requests cannot be expected to lead to the production of the purported relevant information that Plaintiff seeks.

1      In addition, the scope of the legal issues in this case should be focused on Plaintiff's

2  retaliation claims—not his previously dismissed qui tam suit.  Although Plaintiff may contend

3  that his New York Labor Law § 740 claim provides an additional basis for him to seek broad

4  discovery, his claim under the New York statute is cumulative and unduly burdensome,

5  especially given the fact that New York Labor Law § 740 does not provide Moore with any

6  remedies he could not obtain under the federal statute.  These document requests are simply part

7  of a transparent discovery stratagem to force Gilead to have to prepare for an unduly

8  burdensome "mini-trial" on whether Gilead actually engaged in unlawful activity.  Gilead would

9  have to review and potentially produce upwards of **hundreds of thousands of irrelevant**

10  **documents** to respond to Plaintiff's document requests.  The burden of these requests far

11  outweighs whatever relevance Plaintiff alleges.  Accordingly, the Court should sustain Gilead's

12  objections to these document requests and limit the scope of the legal issues in this case to

13  Plaintiff's retaliation claims.

14      **C.**      **Plaintiff Seeks To Invade the Privacy Rights of Other Employees**

15      Several of Plaintiff's requests for production of documents seek information related to

16  other Gilead employees.  Gilead has objected to these requests on the grounds that they are

17  irrelevant, overbroad, unduly burdensome, and would violate the privacy rights of the

18  employees.  For instance, Plaintiff requests "any and all" documents related to Gilead's

19  returning an employee to his previous position after at least 12 weeks of leave in 2007, 2008,

20  and 2009.  *See* Ex. D; RFP Nos. 105, 106, and 107.  Plaintiff also seeks documents and

21  testimony related to disciplinary actions, including terminations, taken against other employees

22  for violations of Gilead's computer use policy, legal hold policies, email archiving policies, and

23  IT acceptable use policies.  *See* Ex. A; RFP Nos. 138, 139, 140, 141, 142, 143, 144, 145, and

24  146.  These requests would require Gilead to reveal the private personnel files of employees.

25  While the Ninth Circuit has held that personnel files are discoverable, *see Kerr v. United States*

26  *District Court*, 511 F.2d 192, 197 (9th Cir. 1975), many courts have considered an individual's

27  right to privacy in discovery disputes and weighed "the need for privacy against the need for

28  disclosure in the litigation."  *See Jadwin v. County of Kern*, 2008 WL 2916386, at *1 (E.D. Cal.

July 28, 2008).  And, courts have agreed that "non-party employees in a case have significant interests in avoiding disclosure of their personal information." *Twigg v. Pilgrim's Pride Corp.*, 2007 WL 676208 (N.D. W.Va. March 1, 2007).  Further, courts have noted that "disclos[ure] of the entire personnel file should be ordered only as a last resort" because "'the very act of disclosing an employee's sensitive and personal data is a highly, and frequently, an unnecessarily intrusive act.'" *Id.* (quoting *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 447-48 (D. Minn. 1997).  Given the privacy interests at stake, Gilead requests that Plaintiff's request be limited to identifying the individuals in 2007 and 2008 who returned to work after 12 weeks of leave, their previous position, any new position obtained, and the individual's current employment status with Gilead.  This limitation would provide Plaintiff with a meaningful portion of the requested information while minimizing the disclosure of any irrelevant—and private—information about an employee.  In addition, Plaintiff's blatant and repeated wiping of his hard drives in violation of Gilead's policies does not entitle him to other employees' sensitive personal data regarding violations of Gilead's computer use policy, legal hold policies, email archiving policies, and IT acceptable use policies.  As such, Gilead should not have to bear the burden and expense of producing this information.

IV.     **CONCLUSION**

        The parties respectfully request the Court's assistance with resolving the above discovery disputes.


DATED:  October 17, 2011


                                        By:     /s/ Richard A. Jones
                                                Richard A. Jones (Bar No. 135248)
                                                1 Front Street.
                                                San Francisco, CA 94111
                                                (415) 591-6000
                                                rjones@cov.com

                                                Thomas S. Williamson, Jr. (*Pro hac vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shimica D. Gaskins (*Pro hac vice*)
Covington & Burling LLP
1201 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 662-6000
twilliamson@cov.com
sgaskins@cov.com

Attorneys for Defendant Gilead
Sciences, Inc.

By:    /s/ Rob Hennig
Rob Hennig (State Bar No. 174646)
Law Offices of Rob Hennig
1875 Century Park East, Suite 1770
Los Angeles, CA 90067
(310) 843-0020
Fax: (310) 843-9150
rob@robhennig.com

Attorney for Plaintiff David Moore

# GENERAL ORDER 45, SECTION X.B. ATTESTATION

I hereby attest that we have obtained concurrence in this filing for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

By:   /s/ Richard A. Jones
Richard A. Jones (Bar No. 135248)
1 Front Street.
San Francisco, CA 94111
(415) 591-6000
rjones@cov.com

Attorney for Defendant Gilead Sciences, Inc.