IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MOORE,<br><br>    Plaintiff,<br><br>  v.<br><br>GILEAD SCIENCES, INC.,<br><br>    Defendant.<br>_____/ | No. C 07-03850 SI<br><br>**ORDER RE: DEFENDANT'S MOTION FOR PROTECTIVE ORDER; NON-PARTY'S MOTION TO QUASH; AND OUTSTANDING DISCOVERY ISSUES** |

On September 29, 2011, Gilead Sciences, Inc. ("Gilead") filed a motion for a protective order. The hearing for that motion was held on October 28, 2011. For the reasons set forth below, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion for a protective order.

On October 15, 2011, a nonparty to this action filed a motion to quash a subpoena seeking his deposition testimony and the production of documents. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the November 18, 2011 hearing. The Court DENIES nonparty's motion to quash the subpoena.

The parties have also filed a Joint Statement on Outstanding Discovery Issues seeking the Court's resolution of their discovery disputes. The Court rules on these issues concurrently with the two motions.

**BACKGROUND**

From 2003 to 2008, Gilead, a corporation that develops and markets pharmaceutical drugs, employed plaintiff Moore as a Therapeutic Specialist, Gilead's term for a sales representative. Pl.'s Fourth Amended Compl. ("FAC") at ¶ 8. As a sales representative, Moore marketed HIV drugs in the

Brooklyn, New York area. *Id.* On November 15, 2006, Moore sued Gilead under the *qui tam* provisions of the False Claims Act, alleging that Gilead was paying physicians to induce them to prescribe Gilead's HIV/AIDS medication. *Id.* at ¶ 14. On March 26, 2008, Moore took a medical leave of absence, alleging anxiety and insomnia problems resulting from the filing of the *qui tam* action. *Id.* at ¶ 19. In August 2008, while Moore was on this medical leave, the Government provided Gilead with the *qui tam* complaint, disclosing Moore as the *qui tam* plaintiff. *Id.* at ¶ 24. That same month, Moore tried to return to work as a Therapeutic Specialist, but Gilead told him that he could not and would have to re-apply again. After interviewing him for his old position, Gilead declined to re-hire Moore and formally separated Moore from the company in October 2008. *Id.* at ¶ 38.

Moore alleges that Gilead illegally discharged him in retaliation after discovering that Moore had filed the *qui tam* action against it. *Id.* at ¶ 40. Moore claims that Gilead wrongfully discharged him in violation of the Federal False Claims Act, 31 U.S.C. § 3730(h) (Count I); New York Labor Law § 740 (Count II); New York False Claims Act, New York Finance Law § 191 (Count III); and New York State Human Rights Law and New York City Human Rights Ordinance (Count IV).

On August 1, 2011 Gilead filed a motion for sanctions requesting monetary damages and dismissal of this action based upon Moore's alleged spoliation of evidence. Doc. 78. In its motion, Gilead claims that from 2006 through 2008, Moore intentionally destroyed over 10,000 relevant documents, correspondence, electronic mail, and other pieces of evidence by wiping data from the hard drive of his company-issued laptop. *Id.* Gilead argues that this deleted evidence was critical to its defense in both the dismissed *qui tam* action as well as Moore's retaliation action. *Id.*

Following Gilead's motion for sanctions, Moore issued new discovery requests that he believes are relevant to his opposition to the motion for sanctions. In response, Gilead filed a motion for a protective order concerning the documents that Moore seeks in his fourth request for production of documents.

In addition, nonparty Dr. Joseph Exilhomme has filed a motion to quash Moore's subpoena seeking Dr. Exilhomme's deposition and the production of documents. Dr. Exilhomme seeks to invoke his Fifth Amendment privilege, asserting that Moore has accused him of engaging in criminal conduct and that he has been threatened with prosecution based upon the matters contained in the Fourth

1 Amended Complaint. In his opposition to the motion to quash, Moore moved for costs incurred in
2 responding to Dr. Exhilhomme's motion, arguing that Dr. Exilhomme's position is "unsupported and
3 unsupportable." Pl.'s Opp to Mot. to Quash at 1.

4 Finally, the parties also request the Court's aid in various discovery disputes.

## LEGAL STANDARDS

### I. Protective Order

Under Fed R. Civ. Proc. 26(c), a party may file a motion for a protective order, and the Court may "issue an order to protect a . . . person from . . . undue burden," including an order "forbidding the disclosure or discovery," "specifying the terms, including time and place, for the disclosure or discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). The Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984).

### II. Motion to Quash Relying on the Fifth Amendment Privilege

Under Federal Rule of Civil Procedure 45(a)(1)(c), any party may serve a subpoena commanding a nonparty "to produce documents, electronically stored information, or tangible things . . . ." Fed. R. Civ. P. 45(a)(1)(C). The subpoena is subject to the relevance requirements set forth in Rule 26(b). Thus, the subpoena may command the production of documents which are "not privileged" and are "relevant to any party's claim or defense" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Upon a timely motion, the court issuing such a subpoena shall quash it if it determines that the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

"The Fifth Amendment 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness

reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (per curiam) (quoting *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972)). "The propriety of invoking the Fifth Amendment privilege depends on whether the risk of prosecution is substantial and real and not merely fanciful." *In re Corrugated Container Antitrust Litig.,* 662 F.2d 875, 883 (D.C. Cir. 1981).

## DISCUSSION

**I. Gilead's Motion for a Protective Order**

### A. Documents and 30(b)(6) Deposition Topics Requested

In his fourth request for production of documents and notice of depositions, Moore seeks various discovery items from Gilead including: (1) information and documents regarding data from Moore's work computer from 2007 to 2008; (2) emails in Gilead's possession pertaining to Moore; (3) any and all documents that Gilead contends Moore improperly destroyed; (4) information and documents pertaining to Gilead's inspections of its employees' computers and Gilead's computer use policies; (5) information and documents relating to when and how Gilead discovered Moore's wiping activities; (6) information and documents pertaining to the Department of Justice's investigation of Gilead in the *qui tam* action.

Though the parties have come to an agreement regarding some of the requests, Gilead seeks a protective order on the following:

1. Document requests numbered: 125, 126, 127, 133, 136, 137, 146, 147, and 150;
   - **125**: The inspection of the mirror image taken from plaintiff's laptop computer in January 2007 including the complete copying of any electronically stored information from this mirror image.
   - **126:** The inspection of the computer hard drive taken from plaintiff's laptop computer in January 2008 including the complete copying of any electronically stored information from this hard drive.
   - **127:** The inspection of the computer hard drive returned by plaintiff to defendant following plaintiff's termination including the complete copying of any electronically stored information from this hard drive.
   - **133:** Any and all emails archived by defendant that plaintiff sent or received in any form including back up systems used for emergency preparedness.
   - **136:** Any and all documents relating or pertaining to any computer inspections performed by a third party vendor as to any computer hard drive or mirror image of any current or former employee of Gilead's from 2005 to the present.
   - **137:** Any and all documents relating or pertaining to any computer inspections performed by a third party vendor as to any computer hard drive or mirror image

4

of any current or former employee of Gilead's other than plaintiff from 2005 to the present.
- **146:** Any and all documents obtained by defendant from its sales representatives related to any legal hold that defendant contends plaintiff violated.
- **147:** Any and all documents turned over to the U.S. Dept. of Justice by defendant as a result of any subpoena received for which a legal hold was issued by defendant that defendant contends plaintiff violated.
- **150:** Any and all documents defendant received from the U.S. Dept. of Justice regarding the legal hold that defendant contends plaintiff violated.

2. 30(b)(6) topics numbered: 7, 8, 12, 14, 15, 16, 17, and 18.
- **7:** The facts and circumstances of any and all documents obtained by defendant from its sales representatives related to any legal hold that defendant contends plaintiff violated.
- **8:** The facts and circumstances of any and all documents turned over to the U.S. Dept. of Justice by defendant as a result of any subpoena received for which a legal hold was issued by defendant that defendant contends plaintiff violated.
- **12:** The availability by any other method of any documents that defendant contends that plaintiff spoliated.
- **14:** The facts and circumstances of defendant's computer use policy in place that was signed and allegedly agreed to by plaintiff.
- **15**: The facts and circumstances of defendant's IT Acceptable Use Policy in place that was signed and agreed to by plaintiff.
- **16**: The facts and circumstances concerning plaintiff's notice of defendant's legal hold that defendant contends that plaintiff violated.
- **17**: The facts and circumstances concerning how defendant first obtained any information about possible wiping activities by plaintiff, when this information was obtained, and what was done in response.
- **18**: The motivations, facts, and circumstances of defendant in conducting extensive computer forensic activities involving any computer hard drive, mirror image of a computer hard drive, or any electronically stored information of plaintiff's.

The Court's rulings on these issues follow.

**B.     Emails on Defendant's Back-Up Recovery System (Document Request No. 133)**

Moore seeks all emails archived by Gilead, sent or received by Moore, in any form, including Gilead's back-up systems for emergency preparedness.

Gilead objects to Moore's requests as burdensome, because accessing the emails from the back-up system would require Gilead to index its wholesale back-up tapes, process the restored data, and conduct a review for the responsive documents. Gilead contends that the cost to index the tapes alone is $360,000. This high cost is due to the fact that Gilead's back-up system is meant to ensure against the loss of the company's entire data network, not to provide recovery of discrete documents. Gilead further contends this cost is unnecessary given that it has already produced 25,000 pages of emails sent

5

or received by Moore. Further, Gilead speculates the back-up system may not have many of Moore's documents. This is because the system backs up data once a month, and if Moore created and destroyed documents in between these one-month intervals, these documents would not have entered the back-up system.

Moore contends that he should not be refused discovery just because Gilead's only back-up system does not easily recover specific documents. Further, Moore agrees to share in the burden of the costs by inspecting the tapes, copying the tapes and retrieving the emails at his own expense as long as Gilead make these back-up tapes available.

The low probative value of these documents does not justify the high cost and effort of obtaining them. Moore's proffered solution to the high cost of recovering these documents is not workable as it would allow him access to the entirety of Gilead's data and proprietary information for the period of several years. Unless Moore agrees to bear the $360,000 cost, the Court GRANTS Gilead's motion for a protective order.

### C. Documents Regarding the DOJ's Investigations (Document Request Nos. 146, 147, 150; Deposition Topics No. 7 and 8)

The second category of documents requested by Moore are documents that Gilead sent to and received from the DOJ regarding the legal hold that the Gilead contends Moore violated.

Gilead argues that these documents are irrelevant to the motion for sanctions concerning Moore's wiping activities because they pertain to the unrelated *qui tam* action. Gilead also contends that these documents may contain privileged attorney-client information or attorney work-product.

Moore disputes Gilead's contention of irrelevancy by stating that he will use these documents to prove that none of the documents Moore allegedly destroyed were relevant to the DOJ investigation or legal hold. Moore also argues that privilege is not an issue here given that a third party, the DOJ, was involved in the handling of these documents.

The Court GRANTS defendant's motion for a protective order with regard to these documents and deposition topics. The burden is on Gilead to prove that any documents Moore destroyed pertained to the DOJ investigation. Therefore, Gilead, not Moore, will have to produce any DOJ-related

documents to support its claim of spoliation.

### D. Documents Regarding Gilead's Discovery of Moore's Wiping Activities and Gilead's Computer Use Policy (Document Request Nos. 136, 137; Deposition Topics 12, 14-18)

Moore also seeks discovery regarding how and when Gilead discovered his wiping activities, whether Gilead monitored any other employees' computers for these activities, and Gilead's use policy regarding computers and technology.

Gilead argues that Moore already has the information he seeks through his 30(b)(6) deposition of Vicki Clewes, Associate Director and head of the Records and Information Management group at Gilead. Def.'s Mot. for Prot. Order at 4. One of the topics of this deposition was to inquire into "the back-up of Mr. Moore's hard drive by Gilead." Ms. Clewes testified as to when and how Gilead learned of Moore's wiping activities. She also testified to Gilead's access to Moore's emails, Gilead's computer use policy, and the legal holds that Moore allegedly violated. Any more detailed information, Gilead contends, would require her and Gilead to disclose confidential attorney-client communication. Furthermore, Gilead argues that this information is irrelevant to the Motion for Sanctions.

Moore urges the Court to allow Gilead to assert its privilege as to specific questions and documents, rather than dismissing an entire category of documents and topics as privileged. Moore contends that the deposition topics that he requests now were not covered in Ms. Clewes' deposition testimony, including topics numbered 14 and 16 (whether Moore agreed to Gilead's computer use policy and whether Moore was notified of Gilead's legal hold). As to relevancy, Moore claims that if Gilead knew about Moore's wiping activities while he was employed and did nothing to stop them, Gilead is estopped from claiming that the spoliation harmed its litigation position. Moore also contends that this information is potentially relevant to his retaliation claim if Gilead conducted forensic examination on only his computer and not any other employee's.

The deposition of Ms. Clewes did not cover the entirety of Moore's requested topics and thus the Court DENIES Gilead's motion for protective order on these deposition topics and will allow Moore to take another two hour deposition of Vicki Clewes. The Court GRANTS Gilead's motion with regard to the documents here - requests 136 and 137.

7

### E. Contents of the Hard Drives at Issue (Document Request Nos. 125-27)

Moore also requests to (1) inspect the hard drives of his work-issued computer and (2) obtain all of the data and information from these hard drives.

Gilead agrees that it will permit Moore's forensic expert to inspect Moore's hard drive to evaluate any spoliation activities. However, Gilead opposes Moore's request to collect all of the information stored on those computers, given that Gilead has already produced the non-privileged relevant documents from this hard drive. To allow Moore to inspect these hard drives without limits, Gilead contends, would be to allow Moore to go on a "fishing expedition."

Moore argues that he has a right to the information on these hard drives because he used these computers in the course and scope of his employment at Gilead. Thus, he contends, there should be no restrictions on the data that he can access on these hard drives.

The information on these hard drives will likely lead to relevant evidence regarding the motion for sanctions or to Moore's retaliation claim. Gilead has not proffered any persuasive reason to preclude Moore from accessing information on a computer that he used while employed by Gilead. Therefore, the Court DENIES Gilead's motion for protective order with regards to the information requested here.

In sum, the Court hereby GRANTS defendant's motion for protective order with respect to Document Requests No. 133, 136, 137, 146, 147, 150 and deposition topics No. 7 and 8 and DENIES defendant's motion for protective order with respect to Document Requests No. 125-27 and deposition topics No. 12 and 14-18.

## II. The Non-Party Motion to Quash

Nonparty Dr. Joseph Exilhomme moves to quash Moore's subpoena seeking Exilhomme's deposition testimony and the production of documents. Exilhomme asserts his Fifth Amendment privilege against self-incrimination by alleging that some of the materials and testimony sought are likely to be incriminating, given Moore's assertion that Exilhomme was a participant in the alleged kickback scheme wherein Exilhomme took exorbitant "speaker fees" in return for prescribing Gilead's medicine. FAC at ¶¶ 14T, 14X. Furthermore, Exilhomme argues, the risk of prosecution here is not

Case 3:07-cv-03850-SI   Document 115   Filed 11/16/11   Page 9 of 13

fanciful, especially in light of the assistant U.S. Attorney's threat to institute an action against Exilhomme for his alleged conduct. Rosenberg Decl. at *¶ 13; see In re Master Key Litig.,* 507 F.2d 292, 293 (9th Cir. 1974) ("[T]he right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution.").

However, Exilhomme cannot make a blanket invocation of the Fifth Amendment privilege. The proper procedure requires the party seeking the protection of the Fifth Amendment to raise the privilege with "respect to a specific question" so that the court can determine whether "a responsive answer might lead to injurious disclosures." *United States v. Drollinger,* 80 F.3d 389, 392 (9th Cir. 1996); *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) ("the only way the Fifth Amendment can be asserted as to testimony is on a question-by-question basis."). Therefore, Exilhomme must attend his deposition and assert his privilege with respect to specific questions; he is not entitled to "voice a blanket refusal to produce his records or testify." *SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 668 (5th Cir. 1981).

Exilhomme also asserts a blanket invocation of his Fifth Amendment privilege with regards to the document production request. A person may only refuse to produce documents on the basis of the Fifth Amendment privilege against self-incrimination if the act of producing the documents has an incriminating aspect. *United States v. Hubbell,* 530 U.S. 27, 36 (2000). The act of production may implicitly communicate "statements of facts" by compelling the person "to admit that the papers existed, were in his possession or control, and were authentic." *Id.* (citing *United States v. Doe,* 465 U.S. 605, 613 n. 11 (1984)). However, if the documents themselves contain incriminating assertions of fact or belief, the Fifth Amendment does not apply because "the creation of those documents was not compelled." *Id.*

Here, Exilhomme has not explained how producing the documents requested by Moore would be an act of self-incrimination. Exilhomme cited an inapposite Second Circuit case in his motion to quash. There, the Second Circuit did not analyze the issue of whether the act of producing the requested documents constituted self-incrimination but rather whether the parties had waived their right to assert the Fifth Amendment privilege. *In re DG Acquisition Corp.,* 151 F.3d 75, 80 (2nd Cir. 1998).

The Court finds more instructive *Hubbell* and *Wyler.* In *Hubbell,* the defendant entered a plea

9

agreement in which he agreed to furnish the government with "full, complete, accurate, and truthful information" about matters relating to an investigation. *United States v. Hubbell,* 530 U.S. at 30. The government later launched a second investigation to determine whether the defendant was complying with this agreement. *Id.* It sought from defendant production of documents relating to matters in the first investigation. *Id.* Thus, that defendant would produce any documents could indicate that he did not comply fully with his plea agreement and therefore would be an act of self-incrimination. This is simply not the case here.

Rather, the Court finds that the circumstances here are more analogous to those in *Bear Sterns & Co. v. Wyler,* 182 F. Supp. 2d 679 (N.D. Ill. 2002). In that breach of fiduciary duty case, the defendant sought to avoid production of documents by asserting his Fifth Amendment privilege, where the plaintiff requested records pertaining to defendant's three investment firms, defendant's wire transfers, and his phone records. *Id.* at 680. The court found that the Fifth Amendment privilege did not protect against producing the documents, reasoning that it was not a crime to make a wire transfer, use the phone, or possess corporate records. *Id.* at 684. It appeared that the defendant there wanted to protect the incriminating content of the documents, which is not covered under the Fifth Amendment privilege against self-incrimination. *Id.* at 684; *see Hubbell,* 530 U.S. at 36.

Likewise, it is not a crime to possess the documents requested by Moore, such as those pertaining to Gilead's speaker programs and payments. Exilhomme's Fifth Amendment privilege does not protect him from producing documents in which the contents may be incriminating, but the act of producing them is not. The motion to quash is DENIED. Moore's request for costs incurred in responding to this motion is also DENIED.

### III.  Outstanding Discovery Issues

The parties filed a joint motion regarding outstanding discovery issues seeking the Court's resolution to the issues below.

#### A.  Moores's Request for Documents, Set One

Moore and Gilead dispute the relevance of Requests Nos. 56-59, 61-64, and 84-85. These are

requests for documents related to the dismissed *qui tam* action. They request documents (1) that relate to Gilead's payments to doctors for speaking or attending meetings; (2) that Gilead provided to Moore relating to the promotion of any of Gilead's drugs since 2005 and meetings Moore attended regarding the promotion of these drugs; and (3) that relate to any complaint of retaliation or violation anti-kickback laws**.** Moore argues that Gilead has provided inadequate responses and refused to produce documents for these requests. Gilead contends that these requests are overly broad, burdensome and would not lead to any relevant information.

These documents will likely lead to relevant evidence regarding Moore's retaliation claim and Gilead is therefore ordered to provide them to Moore.

### B. 30(b)(6) Deposition Topics

In contention are deposition topics 10 and 11 for which Gilead has refused to produce a witness. These topics ask for witnesses with knowledge of the documents and "contents of any documents" that Gilead alleges Moore spoliated. Gilead objects to these topics because Gilead is unable to determine which documents Moore destroyed. Gilead has supplied Moore with a forensic report which identified the file names of certain destroyed documents, to the extent recoverable. However, Gilead claims it has no other way of knowing what was destroyed.

Moore has more knowledge regarding any documents he deleted from his computer than Gilead. Gilead has already provided Moore with a list of destroyed documents. Because Gilead has no other way of knowing what documents Moore destroyed, Gilead is not ordered to produce a witness for deposition topics 10 and 11.

### C. Moore's Request for Documents, Set Four

#### 1. Information Relating to How Gilead Obtained Produced Emails

Regarding Request Nos. 129 and 130, Gilead has produced the emails requested. However, Moore requests information as to how Gilead obtained these emails, such as whether the emails were archived by Moore or other persons.

Gilead is ordered to provide this information as it may lead to relevant information pertaining

to Moore's retaliation claim.

### 2. Documents Pertaining to Alleged Spoliation Activities

Regarding Request Nos. 131 and 132, Moore requests emails Gilead believes he should have retained, and any emails Gilead archived that it contends Moore spoliated. Gilead objects to this request because it is unable to determine which emails Moore spoliated; nor does it have a comprehensive way of identifying emails that Moore should have retained, as it cannot identify emails received by Moore from outside senders.

Similarly, Request Nos. 134 and 135 ask Gilead for documents that it contends Moore spoliated but that Gilead has been able to archive or obtain from other sources. Gilead objects on the grounds that it does not know which documents Moore spoliated and therefore would not be able to identify identical documents in its system.

Request Nos. 148 and 149 seek other documents related to Moore's alleged spoliation of evidence: (1) documents related to "when and how" Gilead contends Moore spoliated evidence and (2) documents "related to any document" Gilead contends Moore spoliated. Gilead contends it has already provided a forensic report listing the file names it has been able to recover of the spoliated evidence, but has no further information regarding what Moore chose to destroy and thus cannot furnish any more information with respect to those documents.

Because Gilead has no way of knowing what Moore chose to destroy, it cannot respond to these requests for documents. Gilead has already provided to Moore the forensic report which lists the file names it has been able to recover of the documents destroyed. Therefore, Gilead is not ordered to respond to these requests.

### 3. Documents Related to Gilead's Alleged Retaliation

Request Nos. 138-145 seek information regarding whether any employees suffered disciplinary action due to violations of Gilead's computer use policy, its legal hold policies or email archiving policies. Gilead contends that production would require invasion of employee privacy.

The Court finds that if and to the extent Gilead continues to assert that it fired Moore for

destruction of documents, this information is relevant to Moore's underlying retaliation claim. *See* Joint Statement on Discovery Issues at 5. To the extent that this request raises privacy concerns, Gilead can replace the employees' names with numbers or use another similar method to hide the identities of the employees.

## CONCLUSION

Accordingly, the Court hereby GRANTS defendant's motion for protective order with respect to Document Requests No. 133, 137, 146, 147, 150 and deposition topics No. 7 and 8, and DENIES defendant's motion for protective order with respect to Document Requests No. 125-27 and deposition topics 12 and 14-18. The Court DENIES non-party's motion to quash and DENIES Moore's motion for costs. The Court orders defendant to produce documents responsive to Moore's Document Requests No. 56-59, 61-64, 84-85, 129, 130, 138-145. Defendant does not have to respond to Document Requests Nos. 131, 132, 134, 135, 148, 149 and deposition topics No. 10 and 11.

**IT IS SO ORDERED.**

Dated: November 16, 2011

SUSAN ILLSTON
United States District Judge